Your Honor, my name is Carol Edward, and I'm here today to represent Mr. Gary Povall. I'm here to ask the Court to issue a decision compelling the Board of Immigration Appeals to follow its own precedent decision, matter of Sanchez-Avila. I'm here to talk about jurisdiction. I'm here to talk about jurisdiction because Sanchez-Avila was a case arising in the context of an exclusion. As this Court is well aware from the many immigration cases that it has seen in recent years, exclusion is a very different process than deportation. Exclusion occurs when a person appears at the border and is making an application to enter the United States. This is under the old immigration laws, and when I say old, I mean pre-IRA-IRA. So it occurred before September 30th of 1996 and before April 1st of 1997, which was actually the effective date of IRA-IRA. This case involves a determination of whether or not a specific provision which gives the immigration judge jurisdiction over exclusion cases allows the immigration judge to proceed in a case like Mr. Poval's. At his hearing, he did not appear, but he had counsel who appeared to contest jurisdiction. The former INA Section 236A states in part that the immigration judge shall have authority in any case to determine whether an arriving alien who has been detained under Section 1225 shall be allowed to enter or shall be excluded and deported. In our case, Mr. Poval was issued an I-122 at the border, which indicated that he would be placed in exclusion proceedings. However, he was not detained, nor was he paroled into the United States. Instead, he was told to return to Canada, which is the border he came from, and that they would send the notice of the next hearing date to his address in England, because he was a British citizen. At his initial hearing ---- Alito, by giving him the notice of the hearing, but failing either to parole him into the United States or to take him into U.S. custody, is it your contention at that point that the INS just lost all jurisdiction over this case? Yes. So the choice to the service at the border is that they can either turn Mr. Poval back, and in some cases we understand that somebody attempting to come into the United States who had been in the United States routinely and had worked in the United States for a number of years would probably make another attempt to come into the United States. So at that point, then, INS has to make a choice that they'll either let him into the hearing, or they're going to have to take him into detention. They have no way of turning him back and saying, look, we'll have a hearing on this to decide whether you can come into the United States in the future without either taking him into physical custody or take the risk that they let him into the United States and then he won't show up. Because of the statute and the way it specifically gave the immigration judge jurisdiction, I would ---- I agree that that is what they had to do at that time. Of course, the law is different now. I mean, we're not talking about the current law, which allows him to go back and it doesn't require that he be permitted. But after this case, you know, this case was decided, I believe, in April of 1996, and then in September of 1996, the law was amended, which now allows a couple of different exclusionary ways for this to happen. One is they could send him back to Canada or tell him they wanted to continue it. They had to show up, and here was their date, and they were allowed to do that and to proceed in absentia if they didn't show up. And now, also, they have a summary exclusion where they can simply say, we find that under these two sections of the law, under 212A6 or 212A7, you don't meet the requirements and we're going to summarily exclude you. No hearing. We're done. Case closed. You're out. So is this purely a matter, then, of statutory interpretation? It is. So it's not outside of Congress's authority, then, to say, you may turn them back at the border and require them to come in if we, as long as we parole them for the purposes of showing up at a future date? Right. Because the statute specifically allows that under the current law. Under the prior law, it only allowed you to either parole them in, and you could parole with conditions, too. So if the concern is that somebody isn't going to show up, they can parole them in. They can say, but I want you to show up once a week and sign in. I mean, that's how they do it now, if they want to parole somebody. We want to see you, or we're going to put a bracelet on your leg, or they have ways to control whether, if they have concerns about whether somebody's going to show up or not. So they do that nowadays. And they also did it then. But they chose, in this case, not to let him in at all. So they could have taken him to detention, or they could have paroled him with some kind of conditions. And they chose to do neither in this case. And what the thing that's, I guess, different in this case is that what, in Sanchez, both the decision by the majority and the decision in the dissent further stated that the court can still have jurisdiction, even if they don't detain him or they don't parole him, if the person comes in before the immigration court and says, please, decide my case. So they submit themselves to the jurisdiction of the court. And that is, but in Sanchez, you had, you also had a situation in which Sanchez had not been paroled into the United States at any point. And so he could not come into the United States to appear at his hearing, right? There wasn't any lawful way that he could get to his hearing without, unless he simply violated the immigration laws again by sneaking into the United States, right? He had not been paroled in for the purposes of appearing for his hearing. He was, I agree that he had not been issued a parole document at any time. There's no indication whether or not he appeared and attempted to get a parole or just decided not to appear. Well, so our situation isn't quite as extreme then as Sanchez's. It's a little different take on Sanchez, because Mr. Povil was paroled into the United States subsequent to his exclusion for the purposes of appearing at his second exclusion hearing. Well, I disagree on whether he was paroled. He was issued a document that would have allowed him to enter the United States. I agree that he was issued a parole document. But the way that parole operates is a person is outside the United States, they make an application at the border, and the parole document is issued at that time. In fact, in another context of immigration law, there's what they generally call advanced parole, a person who has an adjustment of status application pending, perhaps because of an employment sponsorship or family sponsorship. They request a parole document, and sometimes they use it, and sometimes they don't. Well, if they don't use the document, they retain the status they had prior to the document being issued. But if they leave and they reenter the United States, they're deemed to be paroled, and then they'd be subject to exclusion proceedings versus removal proceedings, and it changes the whole way this case, these cases are handled. I want to make sure I understand your theory. The reason that the parole document, what appears to be a parole document, is not effective is, at that point, the United States has already excluded him and lost all power over him, since he's presumably either in Canada or England or someplace else. Right. If he had appeared at the border and they had handed him that document, then they would have had the power. At that point, they had control over him. That's correct. And by issuing them a parole document, they issued it at a time when they had control over him. Since they issued it later, they issued it at a time when they no longer had control over the alien. And I agree with that. Well, is the record clear that he was excluded? It seems to me at the first hearing, it wasn't clear where he was. Right? It wasn't clear. In fact, it really wasn't clear whether he'd been paroled. I didn't think. At the first hearing, there was no indication in the record that he had been paroled. The service had their paperwork in front of them. Also, there was no indication of where he was physically. They didn't know where he was physically. No. Well, they don't know where. In Sanchez Avila, they didn't know where he was either. He could have been in the U.S. His attorney didn't know where he was, apparently. No. Apparently, that's what she indicated at that time. Would it make a difference if we knew that Mr. Povo was in the United States at the time of his first parole hearing or at the time of the first hearing? I think that also makes a difference in that if he was in the United States at the time of the first, which he was on August 23rd when the parole document was issued, they can't retroactively change his status. They can't go and say, somebody who's entered illegally, now we're paroling you in. If you're in the United States, they can't retroactively change your position. So the only option then at that point was to deport him, was to initiate deportation proceedings. Yes. That would have been appropriate at that time. So they can't parole him once he's in the United States? No. And they don't. And I have never, I've been doing immigration law for 20 years, and I have never seen a case where they paroled somebody once they're already here, unless they do a deferred inspection, which is you're at the border, and they tell you at that point, we want to do a further inspection. Come to the Seattle office or the San Diego office or whatever on this date and time. We want to talk to you further about your case. And at that point, when they show up for the deferred inspection, a determination can be made to parole them in, if they so choose. But beyond that, it's simply not done, and there's no authority to do it. And like I said, in 20 years, I haven't seen them try to parole somebody who's already here. This is a totally different procedure. Thank you. Thank you. Ms. Nardone. Good morning, Your Honors. May it please the Court, my name is Nicole Nardone. I'm the attorney for the Respondent of the United States. The prevailing question before the Court this morning is whether an in absentia order of exclusion was properly entered against Mr. Poval, where he applied for admission, was properly notified of his exclusion hearing, failed to appear, hired an attorney to request a withdrawal of his application for admission, who could not verify whether or not he was inside or outside the United States, and actually said during the hearing that she didn't know if he was inside or outside the United States. Well, I guess the question is, what's the legal significance of those facts you recite in terms of distinguishing this case from Sanchez? Well, I believe the case is distinguished from Sanchez in two particular ways. First, as the Court had mentioned, in this case, the alien was indeed paroled into the United States at the time the order was entered. And secondly, the immigration judge in this case did not consent to the withdrawal of, did not consent to the withdrawal of the application for admission, as the immigration service did in the case of Sanchez. In this case, the immigration court was aware of the fact that Mr. Sanchez was indeed, may have indeed been in the United States, and therefore was not provided with, was not assured that he had indeed the intent to abandon his application. The court in Sanchez said that the United States had impliedly consented to the withdrawal of the request for admission by excluding him. Well. Sanchez was caught in Hatch 22. He couldn't come to his hearing. Right. There was no way for him to get to his hearing other than to sneak in through the border because the United States wouldn't admit him. That's right. So they wouldn't admit him, and they wouldn't, they didn't parole him. So he had no way of getting there. Right. And our case is a little different because the government figures out that problem and issues a parole document to Mr. Povil. From Mr. Povil's perspective, the problem is that you issued it too late. You issued it at a time when you had already excluded him from the United States. You sent him back to Canada. What control does the United States have once you've sent him back to Canada and excluded him? Well, I don't believe that, you know, I don't believe that there's an express limitation on the service's ability to parole Mr. Sanchez or, I'm sorry, Mr. Povil into the United States. Although Petitioner's counsel indicates that this was not a proper procedure, there's no indication in the regulations that they're limited from paroling someone into the United States for an express purpose. Let me ask an entirely maybe off-the-wall question. You know, going through all the materials in this case, I couldn't figure out what the government's interest was in pursuing this exclusion hearing for somebody who's not here. No indication he's coming back. I mean, you could do an exclusion proceeding if he does come back, couldn't you? What is this case all about? Well, I think what the case is about is the fact that the — if you take a look at the transcript, it's clear that the immigration judge at the time of the hearing was not assured that Mr. Povil had indeed left the United States and therefore had abandoned his application for admission. And indeed, Petitioner actually filed a motion to reopen which attached their — the Petitioner's request for adjustment of status that indicates that his last admission to the United States was on this date, meaning that he hadn't indeed left the United States. So I think that the interest of the service here was if indeed Mr. Povil wanted to abandon his interest in entering the United States, then he should have actually left the United States as Mr. Sanchez did in that case, where they were assured that he — well, they at least had no indication that he had returned to the United States. You mean we're not confident that when we turned him away at the border that he actually went back to Canada? No, we're not. That's — I think that's the — You mean we think that he sneaked in through another gate or — I mean, we didn't see him letting in, so — Well, there is some indication that whoever was at the first hearing didn't know where he was. They didn't know where he was. And he subsequently tried to adjust his status because he's married a United States citizen and he's been in the United States for a number of years, so it looks like what he really would like to do is to buy more time by forcing the INS to treat him through a deportation proceeding. Well, I think the concern of the service here was that — and I think justifiably so — that an alien can come in one avenue and attempt to enter the United States, maybe get caught with a false document, and then turn around and say, oh, wait a minute, I'd like to withdraw that application. I didn't really mean that. And then turn around and try to come in through a different avenue. And then somehow the service is thereafter limited from taking a look at that first attempt to enter the United States. What are the consequences to Mr. Povel of an exclusion proceeding? Is that preventing him from applying for any other status? I think it's one year, I believe, he's limited from applying. For one year? And of course his exclusion took place in 1996, so we're eight years after his exclusion. It seems to me that if he had just taken the exclusion, he could have just waited and applied a year later, rather than being so many years down the line. Counsel, what authority can you point to that suggests that the United States has the power to parole him at a subsequent time? What is the U.S.'s parole authority at the time that he was excluded? He was paroled under Section 212D5A of the INA. And under that provision, the U.S. district director is provided discretion to parole for a limited purpose if it's in the public interest. But do you have to parole at a time when you physically have control of an alien? I don't believe the regulations indicate that there's any time period, a specific time period indicated when the parole can occur. The regulations themselves just indicate that the parole can occur in certain circumstances, but it doesn't indicate that there's a time period during which that must happen. So your attention is that the United States can parole somebody into the United States at any time? Well, I believe if they believe that, for example, in this situation, an alien has made an application to come to the United States and has not, has claimed to withdraw that application, but indeed is within the United States, I believe at that point, this would be a situation where the district director could issue a parole document in his discretion. I'm not saying that this may be the case in every circumstance, but that this case in particular warrants the use of that discretion. If there's nothing further, I'll close. Thank you. Based on the foregoing, the Court should find that the immigration judge issued an in absentia order of exclusion properly against Mr. Povil and uphold the immigration judge's decision and deny the petition for review. Thank you. Thank you, Ms. Bardot. Ms. Edward, we consumed all of your time, but I will allow one more minute, because at least I have some questions, and I don't know whether my colleagues do, but I do. I would like you to address the following question. Why, at the time that Mr. Povil was stopped at the border, applied for admission, was excluded, and was given a notice at that time of a hearing to be held at a future date in the United States, isn't that an assertion of jurisdiction by the United States such that, at a subsequent time, the United States could issue a parole document to allow him to come for the purposes of attending the hearing? I would agree that it's an assertion of jurisdiction, but since the law says that the immigration judge's decision specifically requires them to detain him, and when you detain an individual, the parole, the ability to parole derives from the ability to detain, but the statute provides that the person shall be detained, and since he wasn't detained at that time when the document was issued, I, and the statute requires that, I don't think that they can subsequently go back and say, well, we weren't detaining you before, and we didn't issue any documents before, but now we've decided that we're going to grab you and bring you back. Well, they're not grabbing him and bringing him back. What they told him was, you're excluded. You're excluded pending a hearing, and we're going to hold this hearing at a future time, and we're going to send, tell us where you're going to be, because we're going to send you a notice so we can let you know. They failed to parole him for the purposes of the first hearing, but they did reschedule the first hearing for a second hearing because his lawyer shows up and doesn't know where he is, and at that point, the United States sort of corrects its first error and says, here's your notice. We want you to come up for the second hearing, and here is your permission to come into the United States for the purpose of attending the hearing. I would argue that in terms of jurisdiction, either you have it or you don't at the time the documents are issued, and when they failed to detain him, when they issued that I-122, that they lost their ability to continue with the case at that point, that they had to make that decision then, not at a later date, because the immigration judge only has jurisdiction on a case if the person is not a detainee. And if you allow the immigration service to simply essentially find jurisdiction at a later date, I mean, jurisdiction basically is either have it or you don't. The case can go forward or not. But your rule would put the INS in a very difficult position, it seems to me, for your client or for future clients, which is that you're going to have to have jurisdiction on a case at a later date. So I'm not really worried about future precedent in terms of how this is going to hurt the service or force an alien to be treated a different way. I do want to point out on the notice that was given to him, they said if you fail to appear, either there could be a second trial, or there could be an order entered, or we could just find that you've withdrawn your application for admission. So that is also on the notice that was provided to him. That would be at the INS's option. It doesn't say that it's INS's option. It says that one of these things could happen. The presumption, I suppose, is that the judge will decide or somebody is going to decide what's going to happen with the case, not necessarily the INS alone. One other thing I wanted to address. Your time has expired. I don't have any other further questions. Okay. Can I say one thing, Your Honor? I just want to point out one thing, and that is that one of the things that was said in the briefing on this is whether or not you could have an attorney come in and contest jurisdiction. And by appearing through an attorney, there was a statement made in some of the briefing that, therefore, the person submitted themselves to the jurisdiction. And I would — I think it's pretty obvious that that's not the case, but the reason why I wanted to point that out to the Court is because in the immigration courts themselves, we have this issue in other areas where the immigration judges don't — do not like to allow limited appearances by an attorney, even to contest jurisdiction or to deal with a specific issue like this. Okay. And I just wanted to point that out to the Court. Thank you. Thank you very much. We thank counsel and the cases submitted.
judges: Browning, Tashima, Bybee